IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MICHELLE ROSE, | CASE NO. 1:19CV514 |
| Plaintiff, | JUDGE CHRISTOPHER A. BOYKO |
| v. | MAGISTRATE JUDGE WILLIAM H. BAUGHMAN, JR. |
| UNITED STATES OF AMERICA LOUIS STOKES VA MEDICAL CENTER, | **REPORT AND RECOMMENDATION RE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| Defendant. | |

**I.**

On November 4, 2017, plaintiff Michelle Rose's father, Billy Ray Rose, died of pancreatic cancer with sepsis.[1] He died in hospice, but he received his healthcare before his death from the Louis Stokes Cleveland Department of Veterans Affairs Medical Center.[2] Rose sued the VA for medical malpractice.[3] Rose represents herself in this case. I previously appointed counsel for her, but that lawyer later asked to withdraw,[4] which I allowed.[5]

---

[1] ECF #44, at 11; ECF #1-3, at 1.
[2] ECF #1-1, at 1. *See* https://www.va.gov/northeast-ohio-health-care/, last accessed on 3/8/22.
[3] ECF #1 and #1-1, at 1.
[4] ECF #22.
[5] ECF #24.

1

The VA seeks summary judgment "because the Plaintiff, Michelle Rose, failed to file an expert report to support her medical malpractice and wrongful death claims, as required by Ohio law."[6] Rose acknowledges that she doesn't have such a report or a medical expert lined up for her case. "I have reached out to multiple expert witnesses that I have worked with in the past at both the Cleveland Clinic Foundation and University Hospitals. Unfortunately, due to the conflict of interest the physicians were not able to provide me with their expert opinion and a few have retired due to the COVID pandemic and are no longer practicing medicine."[7]

The District Judge referred this case to me for pretrial supervision, including the preparation of a report containing my proposed findings and recommendations for disposition of case-dispositive motions.[8] Ohio law, which provides the rule of decision regarding liability in this medical malpractice case, requires Rose to prove an essential element of her case through an expert witness. Rose does not have such a witness. Because the VA has met its burden under the federal rule governing summary judgment, I recommend that its motion for summary judgment be granted.

## II.

*Applicable State Law and Federal Law.* To recommend a ruling on the VA's motion, I need to look at both state and federal law. That may seem strange, since Rose brings her claim in a federal court pursuant to a federal statute. But that duality of the

---

[6] ECF #38, at 1.
[7] ECF #44, at 1.
[8] ECF #4, at 1.

governing laws arises from the way Rose chose to sue the VA.

Rose sued the VA under the Federal Tort Claims Act. Normally, the doctrine of sovereign immunity would prevent Rose from suing a federal agency like the U.S. Department of Veterans Affairs or one of the VA medical centers for medical malpractice. That doctrine says that a sovereign country like the United Stated is immune from suit by private individuals like Rose. The FTCA, though, provides a limited waiver of sovereign immunity. That waiver in turn makes it possible for Rose to sue for her father's death.

The FTCA's waiver of sovereign immunity has a built-in limitation that is important here. Rose can sue the VA for her father's death only to the extent a private person "would be liable to the claimant in accordance with the law of the place where the act or omission occurred."[9] In other words, Ohio law applies for determining liability since the alleged medical malpractice occurred in Ohio. That means I must look to Ohio law on the medical malpractice liability claims Rose alleges in her complaint.

Before 2019, the VA's dispositive motion would have been cut-and-dried due to the absence of a medical expert opinion buttressing Rose's case. Before a ruling that year from our Circuit, a plaintiff like Rose had to meet certain demanding requirements when suing the VA for medical malpractice. Ohio Civ. R. 10 sets out those requirements.

> (2) *Affidavit of merit; medical, dental, optometric, and chiropractic liability claims.*
>
> (a) Except as provided in division (D)(2)(b) of this rule [regarding extensions of time to file an affidavit of merit], a complaint that contains a medical claim, dental claim, optometric claim, or chiropractic claim, as defined in R.C. 2305.113, shall be

---

[9] 28 U.S.C. § 1346(b)(1).

3

accompanied by one or more affidavits of merit relative to each defendant named in the complaint for whom expert testimony is necessary to establish liability. Affidavits of merit shall be provided by an expert witness meeting the requirements of Evid.R. 702 and, if applicable, also meeting the requirements of Evid.R. 601(D). Affidavits of merit shall include all of the following:

> (i) A statement that the affiant has reviewed all medical records reasonably available to the plaintiff concerning the allegations contained in the complaint;
>
> (ii) A statement that the affiant is familiar with the applicable standard of care;
>
> (iii) The opinion of the affiant that the standard of care was breached by one or more of the defendants to the action and that the breach caused injury to the plaintiff.[10]

For many years, lawyers defending healthcare providers like the VA in medical malpractice suits in Ohio federal courts used this rule to target the plaintiff's medical expert and the expert's report (or lack thereof). Successful execution of the strategy often resulted in the dismissal of the lawsuit even before the parties got to the merits. The VA tried that very strategy earlier in this case,[11] but I denied its motion to dismiss without prejudice subject to refiling at a later date shortly after I had appointed counsel for Rose.[12]

For the strategy to work, Ohio Civ. R. 10 had to apply even though the plaintiff filed the lawsuit in federal court. That was normally easy enough, because the FTCA requires state law to be applied in medical malpractice cases brought against the VA in federal court.

A key portion of this law changed in our Circuit in 2019. That year, the United

---

[10] Ohio Civ. R. 10(D)(2)(a).
[11] ECF #8, #8-1, at 2.
[12] ECF #12.

4

States Court of Appeals for the Sixth Circuit applied the law from an earlier Supreme Court opinion[13] to medical malpractice cases involving a federal defendant—in that instance the Federal Bureau of Prisons. The Supreme Court has grappled a long time with the question whether or when state rules of civil procedure or federal rules of civil procedure govern cases brought in federal court based on diversity jurisdiction. To adjudicate this issue, the Court set up a two-part inquiry that poses two questions: (1) Do federal rules of procedure answer the question in dispute? (2) If so, is the particular federal rule valid under the Constitution and the Rules Enabling Act?[14] If the answer to both questions is yes, then the federal rule, not the state rule, applies.

When the Court of Appeals applied this two-part inquiry to a medical malpractice case under the FTCA,[15] it decided that the same question answered in Ohio Civ. R. 10 (Is an affidavit of merit required to file a complaint alleging medical malpractice?) is also answered in Fed. R. Civ. P. 8, 9, and 12. It also held that these federal rules are valid under the Constitution and the Rules Enabling Act.[16] That meant the federal rule applies, which doesn't require an affidavit of merit. Therefore, a plaintiff like Rose who sues the United States for medical malpractice under the FTCA in a federal court in Ohio no longer needs an affidavit of merit.[17]

But the VA now has a different line of argument as to why I should rule in its favor

---

[13] *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010).
[14] 28 U.S.C. § 2072.
[15] *Gallivan v. United States*, 943 F.3d 291 (6th Cir. 2019).
[16] *Id.* at 293–94.
[17] *Id.* at 294.

on its motion for summary judgment.[18] That line of argument leads to the next step in my analysis.

*Summary Judgment Applying Both State Law and Federal Law.* If Rose's complaint doesn't falter because it lacks an affidavit of merit, can the VA still win on its dispositive motion? To answer this question, I again look to both state law and federal law. Ohio law provides the rule of decision in medical malpractice cases brought under the FTCA. Ohio law, therefore, answers the substantive question: What must Rose show to hold the VA liable for the alleged medical malpractice? Federal law governs the procedure of getting there.[19] Federal law, therefore, answers the procedural question: How must Rose proceed in order to litigate her claim?

One of the procedural areas where federal law governs is the standard for summary judgment.[20] Under Fed. R. Civ. P. 56, I must grant the VA's motion if it shows there is no genuine dispute as to any material fact, as supported by the record, and that the movant is entitled to judgment as a matter of law.[21] A dispute about a material fact is genuine where the evidence presented is such that a reasonable jury could return a verdict for the non-movant.[22] I make this determination under the evidentiary standard applicable to the case in a trial on the merits. Thus, in most civil cases including this one, a dispute over a material

---

[18] ECF #49.
[19] *See generally Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 495–96 (1941).
[20] *See Klaxon Co.*, 313 U.S. at 496–97; *Weaver v. Caldwell Tanks, Inc.*, 190 F. App'x 404, 408 (6th Cir. 2006).
[21] Fed. R. Civ. P. 56(c).
[22] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

fact is genuine where a reasonable jury could find for the non-movant by a preponderance of evidence.[23]

In adjudicating the VA's motion, I accept the evidence Rose submits as true, and examine the facts and draw all reasonable inferences from those facts in a light most favorable to her.[24] The VA has the burden of production with respect to evidentiary support for its motion, and must provide sufficient evidence such that a reasonable jury could rule in its favor. Rose in turn has an affirmative duty to point out specific facts in the record that establish a genuine issue of material fact.[25] Summary judgment is appropriate if Rose fails to present evidence sufficient to establish the existence of an element essential to her case and on which she would bear the evidentiary burden of proof at trial.[26]

This last point is key to my adjudication of the VA's motion. It is also where I need to turn to Ohio law.

Remember that the FTCA tells us that state law applies to determine whether the allegedly bad actor is liable.[27] And there is considerable Ohio law indicating that a plaintiff

---

[23] *Anderson,* 477 U.S. at 252.
[24] *Pelland v. Wal-Mart Stores, Inc.*, 282 F. Supp. 3d 1019, 1023 (N.D. Ohio 2017) (citing *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992)); *84 Video/Newsstand, Inc. v. Sartini,* No. 1:07 CV 3190, 2009 WL 10656014, at *5 (N.D. Ohio June 22, 2009), *aff'd,* 455 F. App'x 541 (6th Cir. 2011) (citations omitted); *Santana-Guillen v. Johnson & Johnson,* No. 3:07 OE 40157, 2009 WL 1545791, at *2 (N.D. Ohio June 3, 2009) (citations omitted).
[25] *Santana-Guillen,* 2009 WL 1545791; *Anderson,* 477 U.S. at 252 (noting that the non-movant must show more than "[t]he mere existence of a scintilla of evidence" in opposing a motion for summary judgment).
[26] *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).
[27] *Gallivan,* 943 F.3d at 295 ("the elements for proving liability remain the same in a FTCA action because state law always supplies the rules of decision").

needs a medical expert opinion most of the time to rebut a defendant's summary judgment motion in an Ohio medical malpractice case. In fact, Ohio law is crystal clear on this point.

"It is well settled in Ohio that in order to prevail in a medical malpractice claim, a plaintiff must demonstrate through expert testimony that, among other things, the treatment provided did not meet the prevailing standard of care."[28] The requirement for a medical expert, therefore, is twofold. First, the expert is needed to establish the requisite standard of care and skill. Second, the expert is needed to show by a preponderance of the evidence that the injury, or in this instance the death, complained of "was caused by the doing of some particular thing or things that a physician or surgeon of ordinary skill, care and diligence would not have done under like or similar conditions or circumstances, or by the failure or omission to do some particular thing or things that such a physician or surgeon would have done under like or similar conditions and circumstances, and that the injury complained of was the direct result of such doing or failing to do some one or more of such particular things."[29]

Moreover, Ohio courts have applied this law to physicians and nurses alike. "[E]xpert testimony is necessary to establish the prevailing standard of care where the professional skills and judgment of a nurse are alleged to be deficient. Ohio courts have long recognized this principle."[30]

As often is the case with rules governing civil liability, there is an exception. "It

---

[28] *Ramage v. Cent. Ohio Emergency Serv., Inc.*, 64 Ohio St. 3d 97, 592 N.E.2d 828, 833 (1992).
[29] *Bruni v. Tatsumi*, 46 Ohio St. 2d 127, 346 N.E.2d 673, 677 (1976) (citations omitted).
[30] *Ramage*, 592 N.E.2d at 833.

should be noted that there is an exception to that rule in cases where the nature of the case is such that the lack of skill or care of the physician and surgeon is so apparent as to be within the comprehension of laymen and requires only common knowledge and experience to understand and judge it, and in such case expert testimony is not necessary."[31]

Rose's allegations are far beyond ordinary negligence where she might argue that a medical expert is not needed or where the doctrine of *res ipsa loquitur* might permit an inference of negligence to be drawn.[32] And her claims far exceed anyone's common knowledge. Her version of the events that led to her father's death is chock-full of technical medical terms, diagnoses, and treatment protocols.[33] The complications in her father's medical care apparently arose from the fact that he had previously suffered from bladder cancer. According to Rose, treatment for that cancer created an internal opening or stoma so that her father's urine could leave his body without going through his bladder.[34] Rose postulates that the VA administered the chemotherapy treatment to address her father's pancreatic cancer without properly assessing his risk of septic complications or, simply

---

[31] *Bruni*, 346 N.E.2d at 677 (citing *Hubach v. Cole*, 133 Ohio St. 137, 12 N.E.2d 283 (1938), and *Morgan v. Sheppard*, 91 Ohio Law Abs. 579, 188 N.E.2d 808 (8th Dist. 1963)).
[32] *See*, *e.g.*, *Ault v. Hall*, 119 Ohio St. 422, 164 N.E. 518 (1928) (discussing the *res ipsa loquitur* doctrine where a surgical sponge was left in the patient's abdomen, and holding that a failure to remove such sponges before incision is finally closed is prima facie evidence of negligence); *Jones v. Hawkes Hosp. of Mt. Carmel*, 175 Ohio St. 503, 196 N.E.2d 592 (1964) (ordinary negligence towards a patient who fell from a hospital bed while unattended); *Burks v. Christ Hosp.*, 19 Ohio St. 2d 128, 249 N.E.2d 829 (1969) (same). Compare *Ross v. Am. Red Cross*, 567 F. App'x 296, 311 (6th Cir. 2014) (holding that a case involving follow-up care required expert testimony).
[33] ECF #44, at 5-13.
[34] *Id.* at 6.

put, infections.[35] In Rose's own words: "He was admitted to an Internal Medicine floor unit 4A and not an Oncology unit and I am not sure why this decision was made, but he should have been on a Hematology/Oncology unit where the nurses were trained in dealing with immune suppressed/compromised patient [sic] due to chemo therapy."[36] She follows this with a listing of her father's blood pressure, respiratory rate, platelet count, and leucopenia count. She concludes, "My father DID NOT belong on a Med/Surg floor at the VA Medical Center on his second admission to the hospital on 10/16/2017. He belonged on an Oncology floor/unit and maybe this outcome would have been different. The nursing staff totally neglected my father as a patient as well on [sic] the medical resident staff and the MD's that over see [sic] those residents."[37]

For Rose, these medical terms and protocols may be second nature. After all, she explains that she previously worked in some of the finest medical institutions our community offers—in the Cleveland Clinic Foundation's Taussig Cancer Center, in MetroHealth Medical Center's urology department, in the general academic pediatrics department and the Ireland Cancer Center at University Hospitals, and in the allergy/immunology department at University Hospitals Physician Services. And her work experience is in the areas of oncology, urology, hematology, and immunology,[38] though she doesn't explain what positions or titles she held with these employers or what her educational background is or whether she is continuing to acquire certifications in the

---

[35] *Id.* at 7-8.
[36] *Id.* at 6.
[37] *Id.* at 12.
[38] *Id.* at 3.

10

healthcare profession.

Regardless of her own personal knowledge base acquired through her work experience, none of this medical knowledge can be considered "common knowledge" for any juror from any venire from any part of the country. The medical issues Rose contests are complicated and technical. Her own description of the allegations against the VA reveal as much. It's precisely for this reason why Ohio law requires an expert to explain these types of issues to a jury. Without a medical expert as Ohio law requires, Rose fails to present evidence sufficient to establish the existence of an element essential to her case and on which she would bear the evidentiary burden of proof at trial—indeed on the very issue of liability for the claims she asserts. The absence of a medical expert is a sufficient basis for granting summary judgment in the VA's favor.

*Rose as a Medical Expert Witness.* Rose alternatively argues that she herself could serve as her own expert witness to explain to the jury what happened to her father. She argues that she has the "personal knowledge, skill, experience, training and education to qualify as an expert witness."[39] This would make for a rather unorthodox approach to proving liability with the plaintiff serving as her own witness. Aside from that, Ohio law does not allow Rose to serve as an expert witness.

In answering this final question as to whether Rose can serve as her own medical expert witness, I again look at both state law and federal law. Ohio Evid. R. 601 tells us who is competent to testify as a medical expert witness. By competent, I mean how the

---

[39] *Id.*

11

law defines that word, not how we might use that word in common parlance. Rose may be very competent in the work she does and may have acquired over the years of employment substantial medical knowledge to make her competent to interpret medical records and understand medical procedures. That doesn't mean she is competent to be a medical expert witness as the law defines that term.

Following the two-part analysis that the Court of Appeals has laid out for our Circuit, I must next ask whether there is a federal rule that answers that same question—who is competent to testify as a medical expert witness? If there is a federal rule that answers this question and that rule is valid, then the federal rule would apply.

The answer is yes. Fed. R. Evid. 601 tells us who is competent to testify as a medical expert witness. This federal rule, which is valid and constitutional, provides:

> **Rule 601. Competency to Testify in General**
> Every person is competent to be a witness unless these rules provide otherwise. But in a civil case, state law governs the witness's competency regarding a claim or defense for which state law supplies the rule of decision.

Fed. R. Evid. 702 through 706 also have quite a bit to say about expert witnesses testifying in federal court.

For our purposes in resolving the VA's motion, I focus on the second sentence of this rule to decide whether Rose can serve as her own expert witness. That sentence instructs me to look at state law when determining a witness's competency to testify at trial as an expert witness. That's because in FTCA cases like Rose's, Ohio law supplies the rule of decision—in other words, the rule that determines when the VA is liable for medical

malpractice.[40] In these situations, Fed. R. Evid. 601 says that "state law governs the witness's competency regarding a claim or defense."[41]

This is where Rose's effort to serve as her own expert witness runs into trouble. Ohio Evid. R. 601 provides the following:

> **(B) Disqualification of witness in general.** A person is disqualified to testify as a witness when the court determines that the person is: . . .
>
> **(5)** A person giving expert testimony on the issue of liability in any medical claim, as defined in R.C. 2305.113, asserted in any civil action against a physician, podiatrist, or hospital arising out of the diagnosis, care, or treatment of any person by a physician or podiatrist, unless:
>
> > **(a)** The person testifying is licensed to practice medicine and surgery, osteopathic medicine and surgery, or podiatric medicine and surgery by the state medical board or by the licensing authority of any state;
> >
> > **(b)** The person devotes at least one-half of his or her professional time to the active clinical practice in his or her field or licensure, or to its instruction in an accredited school and
> >
> > **(c)** The person practices in the same or a substantially similar specialty as the defendant. The court shall not permit an expert in one medical specialty to testify against a health care provider in another medical specialty unless the expert shows both that the standards of care and practice in the two specialties are similar and that the expert has substantial familiarity between the specialties. . . .

---

[40] 28 U.S.C. § 1346(b)(1); *Gallivan*, 943 F.3d at 295.
[41] *See also Legg v. Chopra*, 286 F.3d 286, 290 (6th Cir. 2002) (holding that rules of evidence are deemed rules of procedure and thus the Federal Rules of Evidence apply in federal diversity proceedings, but recognizing that an earlier version of Fed. R. Evid. 601 "incorporates the *Erie* mandate" by providing that the competency of a witness shall be determined in accordance with state law when state law supplies the rule of decision).

Nowhere in any of her filings does Rose indicate that she is a licensed medical professional or that she "devotes at least one-half of . . . her professional time to the active clinical practice in . . . her field or licensure, or to its instruction in an accredited school." Moreover, just last September, the Ohio Supreme Court re-examined the witness competency requirements of Ohio Evid. R. 601, and held that "the witness must meet the active-clinical-practice requirement of Evid. R. 601 at the time the testimony is offered at trial."[42]

Rose apparently is not licensed in the fields of oncology, immunology, urology, or hematology. She also doesn't have an active clinical practice, nor does she teach its instruction in an accredited school. Applying Ohio Evid. R. 601(B)(5)'s plain language—a phrase the Ohio Supreme Court used eight times in its recent opinion[43]—to the undisputed facts, I conclude that Rose is not competent to testify as a medical expert witness in her case.

### III.

Since the beginning of her case, Rose has had a difficult time finding an expert witness to provide an opinion on the applicable standard of care and on the issue of the VA's liability for her father's death. She has had ample time, having filed her complaint over two years before the discovery deadline.[44]

---

[42] *Johnson v. Abdullah*, 2021-Ohio-3304, 2021 WL 4301159, at *5 (Sept. 22, 2021).
[43] *Id.* at *1 (2 times), *4 (2 times), *5 (1 time), *8 (3 times).
[44] ECF #1, #36.

14

Difficulty finding an expert witness is a common thread in medical malpractice litigation. The rules are designed so for good reason. The purpose behind these restrictions is "to preclude testimony by the physician who earns his living or spends much of his time testifying against his fellows as a professional witness, and to prevent those whose lack of experiential background in the very field they seek to judge, the clinical practitioner, makes the validity of their opinions suspect, from expressing those opinions for pay or otherwise."[45] The Ohio Supreme Court articulated this purpose over four decades ago, and reaffirmed it just last year.[46]

The law, though perhaps harsh to Rose in its application, is clear. Rose does not have a medical expert witness in her case where one is required. She herself cannot serve as that witness. Without a medical expert witness, she cannot present evidence sufficient to establish an element essential to her case and on which she bears the evidentiary burden of proof at trial. Accordingly, for the foregoing reasons, I recommend that the VA's motion for summary judgment be granted.

Dated: March 8, 2022               s/ William H. Baughman, Jr.
                                   United States Magistrate Judge

---

[45] *McCrory v. State*, 67 Ohio St. 2d 99, 423 N.E.2d 156, 159 (1981).
[46] *Johnson*, 2021 WL 4301159, at *3.

## **NOTICE REGARDING OBJECTIONS**

Any party may object to this Report and Recommendation. To do so, you must serve and file your objections with the Clerk of Court within 14 days after being served with this Report and Recommendation. If this document is being served on you by mail, service by mail is complete when the document is mailed, not when you receive it. If you fail to serve and file your objections within this 14-day time period, you forfeit your rights on appeal, absent a showing of good cause for such failure.