**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MICHELLE ROSE,** | ) | **CASE NO.1:19CV514** |
| | ) | |
| **Plaintiff,** | ) | **SENIOR JUDGE** |
| | ) | **CHRISTOPHER A. BOYKO** |
| **vs.** | ) | |
| | ) | |
| **UNITED STATES OF AMERICA** | ) | **OPINION AND ORDER** |
| **LOUIS STOKES VA MEDICAL** | ) | |
| **CENTER** | ) | |
| | ) | |
| **Defendant.** | ) | |

**CHRISTOPHER A. BOYKO, SR. J.:**

This matter is before the Court on the Report and Recommendation of the Magistrate Judge (ECF # 50), recommending the Defendant United States of America's Motion for Summary Judgment (ECF # 38) be granted.  For the following reasons, the Court adopts the Magistrate Judge's Report and Recommendation and grants summary judgment for Defendant on Plaintiff's claims.

On March 7, 2019, Plaintiff Michelle Rose, acting *pro se*, filed her Complaint with the Court alleging medical negligence and wrongful death of her father Billy Ray Rose under the Federal Tort Claims Act 28 U.S.C. § 1346(b), 2671-2680.  Billy Ray Rose died of pancreatic cancer with sepsis on November 4, 2017 while in hospice care, but received his healthcare just prior to his death from the Louis Stokes Cleveland Department of Veterans Affairs Medical Center.

According to her Complaint, Rose alleges that her father was diagnosed with

pancreatic cancer in late August of 2017.  She alleges he was given a relatively positive prognosis; the tumor on his pancreas was resectable as it had not attached nor spread.  He was prescribed six chemotherapy treatments with the intent of shrinking the tumor so that a surgeon could surgically remove it without cutting any surrounding blood vessels.

After his second chemo treatment, Billy Ray experienced a severe rash, diarrhea and thrush.  The oncologist informed Rose this was likely due to the nausea medication and not the chemotherapy.  Billy Ray was admitted to the hospital until his symptoms cleared up, however, he began experiencing difficulty urinating.   The nurses were ordered to drain Billy Ray's urine via a catheter and document his fluid intake and output.  However, Rose alleges the nurses failed to drain Billy Ray's bladder for two days resulting in Billy Ray experiencing tremendous pain and swelling of his stomach.

Billy Ray was taken for an x-ray where it was discovered his blood pressure had dropped significantly, requiring he be transferred to the Intensive Care Unit.  A urologist was called and he drained over 3500 cc's of urine from Billy Ray.  However, Rose alleges the urine had backed up into Billy Ray's system causing sepsis.

One week later, the oncologist informed the family that they were unable to clear up the sepsis and it was now too late to treat the cancer.  All treatment was stopped and Billy Ray was transferred to hospice for end of life care.

Billy Ray died after a week in hospice but the hospice doctor listed pancreatic cancer as the cause of death without any reference to sepsis.  Rose alleges Billy Ray died due to medical neglect and lack of appropriate care.

Due to her *pro se* status, the case was referred to the Magistrate Judge for pretrial

supervision.  The Magistrate Judge appointed counsel for Rose, but that counsel subsequently withdrew after four months.

**The VA Motion for Summary Judgment and Rose's Opposition**

Defendant's summary judgment motion argues that Rose's claims fail because she has not shown by the requisite medical expert testimony that Billy Ray's injuries and death were caused by medical treatment that fell below the appropriate standard of care.  Under the FTCA, federal courts apply the law of the state wherein the alleged medical malpractice occurred.  Billy Ray received his treatment in Ohio, therefore, Ohio law governs these claims. According to Defendant, Ohio law requires medical expert testimony when a claim of medical malpractice causing injury or death is alleged.  Here, Rose has produced no medical expert testimony in support of her claim.  Thus, Defendant argues it is entitled to summary judgment on Plaintiff's medical malpractice claim.

Rose acknowledges she was unable to obtain an expert to testify in support of her claims, however, she argues her claims do not require expert testimony but instead fall under the "common knowledge" exception.  Even assuming they do require expert testimony, Rose argues she qualifies as an expert given her experience working for the Cleveland Clinic and University Hospitals in their respective oncology departments.  She was also in charge of coordinating, attending and taking minutes for the Tumor Board meetings at UH.  She represents she has extensive training, personal knowledge and education in Urology, Hematology/Oncology and Immunology.

Rose attaches Billy Ray's medical records, pointing out treatments or lack thereof that constitute medical malpractice including:

3

- Failure to treat her father with antibiotics when blood tests results showed lowered white blood cell counts and a medical chart notation that "given decreased WBC cannot rule out infectious process and COPD exacerbation."

- Having a resident who was not an oncology resident make the determination not to treat her father with antibiotics.

- Placing her father on the Internal Medicine floor instead of the Hematology/Oncology where the employees were better prepared to treat immuno-compromised cancer patients.

- Failing to drain Billy Ray's bladder for two days.  Rose notes that a normal person's bladder holds 700-750 mls of urine but Defendant drained five times that amount from her father's bladder on October 20, 2017, which shows no one used a catheter on her father for days prior, which she alleges caused the urine to back up into his system causing sepsis.

- Finally, the medical record records indicate Billy Ray's sepsis was possibly due to urine.

Rose contends that based on all of the above incidents, it "does not take a rocket scientist" to understand the cause of her father's death was due to medical neglect and malpractice and a jury could find the same without requiring expert testimony.

**The Report and Recommendation**

The Magistrate Judge recommends granting summary judgment for the USA.  Under the FTCA, the United States allows a limited waiver of its sovereign immunity from suit in instances like this where a private person "would be liable to the claimant in accordance with

4

the law of the place where the act or omission occurred." See 28 U.S.C. 1346(b)(1).

The Magistrate Judge first found that Rose did not need an Affidavit of Merit to bring her suit in federal court pursuant to the Sixth Circuit decision in *Gallivan v. United States,* 943 F.3d 291 (6th Cir. 2019).  Prior to *Gallivan*, federal courts had dismissed FTCA Ohio-based medical malpractice claims lacking an Affidavit of Merit because Ohio Rule of Civil Procedure 10 requires such an affidavit at the time the suit is filed.  The Sixth Circuit in *Gallivan* held that the Affidavit of Merit requirement found in Ohio Rule of Civil Procedure 10 did not apply in FTCA cases as the Federal Rules of Civil Procedure govern and these do not require an Affidavit of Merit.

However, the Magistrate Judge determined that Ohio substantive law still requires expert medical testimony to support a malpractice claim insofar as it is needed to establish the appropriate standard of care and skill and the causal connection between the alleged injury suffered and the allegedly deficient care provided.

The Magistrate Judge further determined that Rose's allegations go far beyond ordinary negligence and exceed a layperson's knowledge is it is "chock-full of technical medical terms, diagnoses and treatment protocols."  (ECF # 50 pg. 9).  Rose asserts that Billy Ray had a reconstructed bladder from a prior bout with bladder cancer in the early 1990s.  As a result he had a stoma (an internal opening) through which his urine could leave his body without going through his bladder.  She goes into some detail on her father's blood test results, blood pressure and respiration and from those readings concludes the care was substandard.

Although she describes where she worked and some of the work she did, Rose fails to

describe what her education background is and if any of her positions at medical facilities related to patient care.

Based on her recitation of the medical records and Billy Ray's medical history and condition, the Magistrate Judge found such facts were beyond the common knowledge of a jury as they are complicated and technical.  Therefore, the Magistrate Judge concludes Rose needed a medical expert to testify and her failure to obtain one is fatal to her claims.

Rose also argues that she would qualify as a medical expert given her work experience but the Magistrate Judge found that Ohio law bars Rose from testifying as an expert.  Under Federal Rule of Evidence 601, "Every person is competent to be a witness unless these rules provide otherwise.  But in a civil case, state law governs the witness's competency regarding a claim or defense for which state law supplies the rule of decision."  The Magistrate Judge then looked to Ohio Rule of Evidence 601 to determine who can testify as an expert witness:

(B) Disqualification of Witness in General. A person is disqualified to testify as a witness when the court determines that the person is:

> (5) A person giving expert testimony on the issue of liability in any medical claim, as defined in R.C. 2305.113, asserted in any civil action against a physician, podiatrist, or hospital arising out of the diagnosis, care, or treatment of any person by a physician or podiatrist, unless:
>
> (a) The person testifying is licensed to practice medicine and surgery, osteopathic medicine and surgery, or podiatric medicine and surgery by the state medical board or by the licensing authority of any state;
>
> (b) The person devotes at least one-half of his or her professional time to the active clinical practice in his or her field of licensure, or to its instruction in an accredited school and
>
> (c) The person practices in the same or a substantially similar specialty as the defendant. The court shall not permit an expert in one medical specialty to testify against a health care provider in another medical specialty unless the

6

expert shows both that the standards of care and practice in the two specialties
are similar and that the expert has substantial familiarity between the
specialties.

If the person is certified in a specialty, the person must be certified by a board
recognized by the American board of medical specialties or the American
board of osteopathic specialties in a specialty having acknowledged expertise
and training directly related to the particular health care matter at issue.

Because Rose does not describe in any great detail her employment background, does
not indicate she is licensed to practice medicine, does not offer evidence she devotes half her
practice (even assuming she has a practice which she does not allege) to active clinical
practice in her field or licensure and does not offer evidence she practices in the same
specialty as she seeks to opine on, the Magistrate Judge determined she does not qualify as an
expert witness.

As a result, the Magistrate Judge recommends summary judgment for Defendant as
Rose cannot testify based on common knowledge nor can she offer her opinion as a medical
expert.

**<u>Objections</u>**

Rose acknowledges she is not an expert and further acknowledges she does not seek to
testify as an expert.  However, she contends she has twenty-three years experience in the
medical field as an office manager, doctor's secretary, department coordinator, nursing
coordinator and "other duties as assigned." (ECF # 51 pg.2).  She contends this experience as
well as her experience working in oncology and urology departments qualifies her to testify
and prove the medical neglect, loss of chance and breach of policy claims under the Ohio
Administrative Code and the Ohio Board of Nursing Standard of Care.

7

Rose argues that she has attempted to obtain a medical expert but has not been able to obtain one as of the date of this opinion due, in part, to her misunderstanding that she needed an attorney before obtaining an expert.  She requests the Court allow her additional time to obtain an expert but argues that, even without one, the facts of the case, medical records and her own medical knowledge are sufficient to show medical negligence and are *res ipsa loquitur* of medical negligence.

## LAW AND ANALYSIS

### Standard of Review

Pursuant to Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636(b)(1)(c), the District Court shall review *de novo* any finding or recommendation of the Magistrate's Report and Recommendation to which specific objection is made.  A party who fails to file an objection waives the right to appeal.  *U.S. v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).  In *Thomas v. Arn*, 474 U.S. 140, 150 (1985), the Supreme Court held: "[i]t does not appear that Congress intended to require district court review of a magistrate judge's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."

Local Rule 72.3(b) recites in pertinent part:

> The District Judge to whom the case was assigned shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge.

Put another way, 28 U.S.C. § 636(b) and Local Rule 72.3 authorize the District Court Judge to address objections by conducting a *de novo* review of relevant evidence in the record before the Magistrate Judge.  Parties are not permitted at the district court stage to raise new

arguments or issues that were not presented to the magistrate.  *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000), citing *United States v. Waters*, 158 F.3d 933 (6th Cir. 1998).

Rose relies on much the same arguments as she made in opposition to Defendant's summary judgment motion.  These were thoroughly addressed in the Magistrate Judge's Report and Recommendation and Rose offers no new argument nor evidence that would warrant a different outcome.

The Magistrate Judge correctly recites Ohio law which holds, "whether the physician and surgeon has proceeded in the treatment of a patient with the requisite standard of care and skill must ordinarily be determined from the testimony of medical experts.  (Internal citation omitted).  It should be noted that there is an exception to that rule in cases where the nature of the case is such that the lack of skill or care of the physician and surgeon is so apparent as to be within the comprehension of laymen and requires only common knowledge and experience to understand and judge it, and in such case expert testimony is not necessary."  *Bruni v. Tatsumi,* 46 Ohio St. 2d 127, 130, 346 N.E.2d 673, 676–77 (1976).

The same requirement applies to a nurse's conduct under Ohio law.  "Whether a nurse has satisfied or breached the duties of care owed to the patient is determined by the applicable standard of conduct.  The standard of conduct applicable to this issue is proved by expert testimony.  'In a negligence action involving the professional skill and judgment of a nurse, expert testimony must be presented to establish the prevailing standard of care, a breach of that standard, and, that the nurse's negligence, if any, was the proximate cause of the patients injury.'"  *Dimora v. Cleveland Clinic Found.,* 114 Ohio App. 3d 711, 718, 683 N.E.2d 1175, 1180 (1996) quoting  *Ramage v. Cent. Ohio Emergency Serv., Inc.* (1992), 64 Ohio St.3d 97,

9

592 N.E.2d 828, paragraph one of the syllabus. "In a negligence action involving conduct within the common knowledge and experience of jurors, expert testimony is not required." *Id.* at 103, 592 N.E.2d at 833.

"Plaintiff must be able to make out a medical malpractice claim under Ohio law to have a viable claim under the Federal Tort Claims Act ("FTCA"). The Sixth Circuit has applied the expert testimony rule in Ohio medical malpractice to actions brought under the FTCA." *Rodriguez v. United States,* No. 1:14-CV-02526, 2015 WL 5444804, at *2 (N.D. Ohio Sept. 15, 2015).

Although Rose contends that she can testify to the appropriate standard of care, based on her experience, training and the medical records, Ohio law requires expert testimony to establish the standard of care. "Proof of the recognized standards must necessarily be provided through expert testimony." *Id.* Rose primarily relies on the "common knowledge" exception and the *res ipsa loquitur* doctrine that Defendant's purported mistakes are obvious and understandable for the layperson and consequently do not require expert testimony. However, as the Magistrate Judge explained in his Report and Recommendation, conduct that involves medical decisions regarding diagnosis, treatment and causation, particularly in light of Billy Ray's past cancer treatment, reconstructed bladder and COPD, clearly fall outside a layperson's knowledge.

The Court agrees with the Magistrate Judge that Rose's claims of medical negligence involve complex treatment decisions and arise at least in part on Billy Ray's medically unique history and Defendant's attempt to treat his cancer in light of his prior history of cancer and reconstructed bladder and complications that arose from it. "It is well settled in Ohio that in

10

order to prevail in a medical malpractice claim, a plaintiff must demonstrate through expert testimony that, among other things, the treatment provided did not meet the prevailing standard of care." *Ramage*, 64 Ohio St. 3d at 102.

Moreover, questions concerning the cause of Billy Ray's death, be it from pancreatic cancer, sepsis or combination of the two, necessarily requires a medical expert to testify to causation.  In general, the plaintiff in a medical malpractice case "must prove causation through medical expert testimony in terms of probability to establish that the injury was, more likely than not, caused by the defendant's negligence." *Davis v. United States*, 302 F. Supp. 3d 951, 957 (S.D. Ohio 2017) citing *Roberts v. Ohio Permanente Med. Grp., Inc.,* 76 Ohio St. 3d 483, 485, 668 N.E.2d 480 (1996).  Thus, Plaintiff cannot establish her wrongful death claim in the absence of expert testimony.

Lastly, Rose asks for additional time to find a medical expert, but the Court agrees with the Magistrate Judge that Rose had over two years to obtain an expert and had counsel appointed by the Court for more than four months to aid in prosecuting her claims.  This was more than sufficient time to obtain an expert and the Court denies her request.

Therefore, for the foregoing reasons, the Court adopts the Magistrate Judge's Report and Recommendation and grants summary judgment for Defendant on all of Rose's claims.

IT IS SO ORDERED.


/s/Christopher A. Boyko
CHRISTOPHER A. BOYKO
Senior United States District Judge

11